## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) DAWNA JOYCE GRANT<br><br>    **Plaintiff,**<br><br>vs.<br><br>1) JASON GRANT,<br>2) LINDSAY GRANT,<br>3) DIANE GRANT,<br>4) STEVE MILLER,<br>5) EMILY MILLER,<br>6) ISAAC MILLER,<br>7) CATHY KESSLER, and<br>8) FIDELITY INVESTMENTS, INC.<br><br>    **Defendants.** | NO. 18-CV-_____ |

### COMPLAINT

Plaintiff, Dawna Joyce Grant ("Dawna"), by and through her attorneys, James C. Milton and Bryan J. Nowlin, of the law firm Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., and for her Complaint against Defendants, Jason Grant, Lindsay Grant, Diane Grant, Steve Miller, Emily Miller, and Isaac Miller (collectively "Defendants"), states and allege as follows:

### I. NATURE OF ACTION

1. This is an action for declaratory judgment to determine a dispute as to which Transfer on Death beneficiary designation should control as between the parties herein, and an action for negligence as to Fidelity and its agent, Cathy Kessler, for assisting in the alterations.

### II. PARTIES

2. Plaintiff Dawna Joyce Grant is a resident of Sonoma, Sonoma County, State of California.

3. Defendant Cathy Kessler is a resident of Tulsa County, State of Oklahoma, in this

judicial district.

4. Defendant Fidelity Investments, Inc., is a multinational financial services corporation doing business nationally, including in this judicial district, but with a headquarters in Boston, State of Massachusetts.

5. Defendant Jason Grant is an individual with his permanent residence in the State of Texas. Jason Grant is a named beneficiary of a brokerage and IRA account physically administered within Tulsa, Oklahoma.

6. Defendant Lindsay Grant is an individual with her permanent residence in the State of Maryland. Lindsay Grant is a named beneficiary of a brokerage and IRA account physically administered within Tulsa, Oklahoma.

7. Defendant Steve Miller is an individual resident of the City of Duncan, State of Oklahoma. Steve Miller is a named beneficiary of a brokerage account and IRA physically administered within Tulsa, Oklahoma.

8. Defendant Emily Miller is an individual resident of Oklahoma City, State of Oklahoma. Emily Miller is a named beneficiary of a brokerage account and IRA physically administered within Tulsa, Oklahoma.

9. Defendant Isaac Miller is an individual resident of Oklahoma City, State of Oklahoma. Isaac Miller is a named beneficiary of a brokerage account and IRA physically administered within Tulsa, Oklahoma.

10. Defendant Diane Grant is an individual with her residence in the State of Texas. Diane Grant is a named beneficiary of a brokerage and IRA account physically administered within Tulsa, Oklahoma. Diane is a former daughter in law of Leatrice Joyce Grant and the mother of Defendants Jason and Lindsay Grant.

11. Defendants Jason Grant, Diane Grant, and Lindsay Grant have traveled to this judicial district to transact business referenced in this Complaint. Furthermore, Lindsay and Jason have submitted to the jurisdiction of the state courts of Oklahoma for matters involving the guardianship of the late Leatrice Joyce Grant and the Probate of the Estate of Leatrice Joyce Grant.

### III. JURISDICTION AND VENUE

12. This Court has jurisdiction of the claims of this action pursuant to 28 U.S.C. 1332.

13. Venue is proper in this district in accordance with 28 U.S.C. § 1391.

### IV. FACTUAL ALLEGATIONS

14. During her life and up to the imposition of a guardianship, the late Leatrice Joyce Grant ("Joyce") held substantial brokerage and IRA accounts at Fidelity Investments as administrated by her personal Fidelity financial advisor Cathy Kessler in Tulsa, Oklahoma.

15. Joyce placed "transfer on death" or "pay on death" beneficiary designations for these accounts.

16. Joyce administered the brokerage accounts subject of this action from a Fidelity office in which Cathy Kessler operated in Tulsa, Oklahoma.

17. There exists a long history of family discord and knowledge of future inheritance in this matter. Jason and Lindsay are the children of Dawna's brother, James Grant. James Grant was disinherited by Joyce several years prior to her death as a result of false allegations that he had made against Dawna that she had stolen Joyce's jewelry and other issues Joyce experienced with her son. Upon information and belief, Jason and Lindsay act at the behest and urging of James Grant, who objects to the action his mother took several years ago to remove him as a beneficiary of her estate plan.

18. After the death of her husband, Joyce continued to live alone in her home in Tulsa for several years. However, on July 6, 2017, Joyce experienced a severe shortness of breath and was taken to a hospital emergency room for treatment. That same day, Joyce asked her daughter Dawna to come and care for her in her home because of her incident and failing health. Dawna arrived that same night in Tulsa.

19. Joyce asked Dawna's husband Don to also come to Tulsa and help care for her and Don arrived in Tulsa on July 21, 2017. Dawna and Don provided near 24/7 care for Joyce. This care did not end until January 11, 2018 when Joyce had to be admitted to a memory care facility. Joyce was appreciative of Dawna's willingness to immediately leave her home in Sonoma and come and care for her, and stated that most children would have just placed her in a nursing home and gone back home. Joyce's belief and trust in Dawna and her husband were reflected in her Last Will and Testament and codicil, DPOA, Guardianship of person and property, and Health Care Proxy.

20. To facilitate payment for her care and other expenses and on her own in initiative, Joyce transferred $200,000 from Fidelity to her trust account at the Bank of Oklahoma on or about September 14, 2017. Dawna and Don were unaware of this transfer when made by Cathy Kessler and Fidelity. Later, Dawna and Don were informed of the transfer and it was agreed by Joyce that $150,000 of the money could be invested in Vanguard to earn more interest. Joyce then became confused about the Vanguard investment and apparently informed Jason Grant and Diane Grant. Jason and Diane then utilized Joyce's confusion about the investment at Vanguard as a means to gain further influence over Joyce and to benefit themselves upon her death.

21. On or about October 24, 2017 Jason Grant arrived in Tulsa. Jason only stayed a few hours and met with Joyce behind closed doors in her bedroom. Upon information and belief,

4

Jason laid the groundwork to obtain power for himself over Joyce's Fidelity accounts.

22. On or about October 29, 2017, Diane Grant (Jason's mother) arrived at Joyce's home. Diane also met with Joyce behind closed doors in her bedroom. Diane apparently obtained the signatures of Joyce on documents submitted by Jason to grant Jason power over the Fidelity accounts and revoke Dawna's authority. [**Exhibit 1**, Purported Revocation and DPOA in favor of Jason.]

23. On Nov 2, 2017, Cathy Kessler of Fidelity met with Joyce alone in Joyce's bedroom behind closed doors. Dawna was asked by Cathy not to enter the bedroom. Sometime subsequent to this meeting, the Fidelity "Beneficiaries – Transfer on Death" percent distributions were modified to the detriment of Dawna and her grandson Jack Grant and to the benefit of Jason Grant, Diane Grant, Lindsay Grant, Steve Miller, Emily Miller, and Isaac Miller. [**Exhibit 2**, Transfer on Death Forms 11/2/2017].

24. Joyce altered the beneficiary designations on or about November 2, 2017, with the assistance of Cathy Kessler, while under the undue influence of Jason and Diane Grant. More Specifically, Jason and Diane had caused Joyce to increase inheritance percentages for their own benefit and to the detriment of Dawna and her grandson. The signatures which purport to be from Joyce are evidence itself of Joyce's weakened state.

25. Jason and Diane had been aware that Joyce was in very poor health, confined to her residence and mostly a hospital bed and vulnerable. Joyce was diagnosed with a rapid onset of dementia due to Alzheimer's in early January 2018. As a result of Joyce's weakening condition and vulnerability, Jason was able to impose his will on Joyce. Joyce was placed under a Special Guardianship shortly after the beneficiary changes.

26. Joyce passed away on March 29, 2018.

## V.  CAUSES OF ACTION

### DECLARATORY JUDGMENT
### (Jason, Lindsay, Diane, Steve, Emily, Isaac)

27.   The Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

28.   There exists an actual case or controversy between Plaintiff and Defendants Jason Grant, Lindsay Grant, and Diane Grant regarding the validity of the November 2017 beneficiary designation form.  Defendants Steve Miller, Emily Miller, and Isaac Miller, also hold an interest in the November 2017 beneficiary designations. Plaintiff contends that the change in beneficiaries as noted on **Exhibit 2** is invalid.

29.   The Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, *et. seq.* to determine her rights and the legal relations of the parties concerning the beneficiary designation form, specifically a declaration that the November 2017 form is invalid and that Fidelity should pay funds in accord with the prior beneficiary designations made by Joyce when she had full mental capacity and was not acting under the undue influence of Jason.  The Plaintiff seeks a declaration that the beneficiary designation forms noted on **Exhibit 3** executed on August 29, 2016 are valid and shall control distribution of the accounts.  [**Exhibit 3**, Transfer on Death Forms 8/29/2016].

30.   Plaintiff further requests that the Court require Fidelity to comply with a declaratory judgment regarding the validity of the November 2017 beneficiary designations.

32.   The total amount in controversy as a result of the alterations in beneficiary designations exceeds $75,000.

## NEGLIGENCE
### (Fidelity and Kessler)

31.     The Plaintiff realleges and incorporates by reference the allegations contained in each preceding paragraph of this Complaint.

32.     Fidelity and Kessler owed a duty of care to their customers to refrain from allowing alterations to the accounts which Fidelity and Kessler have reason to know are not of the account holder's unfettered free will.

33.     Fidelity and Kessler's conduct violated that standard of care by facilitating Jason and Diane to make alterations to her accounts while Joyce lacked capacity and was subject to undue influence.

34.     Fidelity and Kessler's conduct violated Oklahoma public policy as expressed in the Oklahoma Protective Services for the Elderly and for Incapacitated Adults Act ("Act"), 43A O.S. 10-101 *et seq*.  More specifically, Fidelity and Kessler engaged in "exploitation" of a "vulnerable adult," as those terms are defined by the Act.  Under the Act, "exploitation" means

> [A]n unjust or improper use of the resources of a vulnerable adult for the profit or advantage, pecuniary or otherwise, of a person other than the vulnerable adult through the use of undue influence, coercion, harassment, duress, deception, false representation or false pretense.

43A O.S. 10-103(A)(9).

35.     "Vulnerable adult" is defined as

> [A]n individual who is an incapacitated person or who, because of physical or mental disability, including persons with Alzheimer's disease or other dementias, incapacity, or other disability, is substantially impaired in the ability to provide adequately for the care or custody of himself or herself, or is unable to manage his or her property and financial affairs effectively, or to meet essential requirements for mental or physical health or safety, or to protect himself or herself from abuse, verbal abuse, neglect, or exploitation without assistance from others.

7

*Id*. 10-103(A)(5).

36. Fidelity and Kessler had sufficient reason to suspect undue influence and potential exploitation by Jason. Fidelity and Kessler were aware of Joyce's advanced age. Fidelity and Kessler were aware that Joyce could not leave her home and was in need of constant care. Fidelity and Kessler were already aware that Joyce had a power of attorney prepared by Kessler on her account, and that there was no legitimate need for a second power of attorney. Fidelity and Kessler were also aware that the existing Fidelity power of attorney required Joyce to provide written notice to Dawna about her intent to revoke her power of attorney which was not provided. Nevertheless, when Jason presented Fidelity and Kessler with a power of attorney which he drafted himself, to grant himself control over Joyce's accounts, Fidelity and Kessler acquiesced to Jason's request for authority. Upon information and belief, Cathy Kessler also acquiesced to Jason's request to take control of Joyce's Fidelity accounts by assisting him in changing the username and password on Joyce's Fidelity accounts and adding Jason's email address and physical address to the accounts. Fidelity ignored a February 9, 2018 letter from Dawna's attorney placing Fidelity on notice that no action be taken on Joyce's accounts and that a court order was required before any action was taken regarding the Fidelity accounts.

37. Plaintiff has been actually damaged by Fidelity and Kessler's negligence. Fidelity and Kessler's conduct is the proximate cause of Plaintiff's injury.

38. Fidelity and Kessler's conduct was grossly negligent such that the Court should impose exemplary damages.

## JURY DEMAND

39. Plaintiff demands a jury trial for all claims that may be tried to a jury herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief against Defendants:

A.  For a judicial declaration that the beneficiary designation forms dated November 2017 are invalid; and further declaring that the previous designations shall control distribution of the accounts following Joyce's death;

B.  For an award of damages in excess of $75,000;

C.  For an award of attorney's fees and costs as allowed by law;

D.  For such other and further relief as the court deems just and proper.

Respectfully submitted,

*s/Bryan J. Nowlin*
James C. Milton, OBA No. 16697
Bryan J. Nowlin, OBA No. 21310
**HALL, ESTILL, HARDWICK, GABLE,
  GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone (918) 594-0400 /Fax (918) 594-0505
**ATTORNEYS FOR PLAINTIFF
DAWNA JOYCE GRANT**

3692567.1:004273:00001